Filed 12/1/23  P. v. Pena CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B321600 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA496424) |
| v. | |
| BIANCA PENA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Norman J. Shapiro, Judge.  Affirmed.

Larenda R. Delaini, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Bianca Pena appeals from her conviction by jury of two counts of felony stalking. Her sole contention on appeal is that her trial counsel was ineffective in failing to file a mental health diversion application pursuant to Penal Code section 1001.36.

We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

From approximately April 2020 through June 2021, defendant repeatedly harassed Ingrid M. and her adult daughter Raquel M. because defendant erroneously believed Raquel was seeing defendant's boyfriend Moises (we identify the victims only by their first names to protect their privacy). Raquel, who was married, pregnant and in her early 30's at the time, had not dated or been in contact with Moises since she was a teenager.

Defendant made threatening and crude phone calls (sometimes multiple times a day) to both women, in addition to sending e-mails and messages through social media. At one point, she told Ingrid she was going to kill her and her unborn grandchild. Defendant told Raquel she needed to die and to abort her unborn child and that she had people watching her, her mother and her grandmother. Raquel was so frightened by defendant's behavior that she moved to Orange County where defendant eventually tracked her down.

Defendant also made over 150 calls to 911 that resulted in officers going out to the victims' homes on false pretenses, and she made a false report to the California Board of Registered Nursing about Raquel, who is a registered nurse. After defendant's arrest, she admitted to engaging in most of this conduct, but denied that she ever made any threats.

2

Defendant was charged with two counts of making criminal threats (Pen. Code, § 422, subd. (a); counts 1 & 4) and two counts of felony stalking (§ 646.9, subd. (a); counts 2 & 3).

Trial by jury began in May 2022. Just before the start of jury selection, defense counsel advised the court that defendant "for the first time" that morning told him she was interested "in mental health diversion" or, because she is a former army guard, "going to military court." The prosecutor objected saying the jury was outside waiting, defendant had already been in custody long enough to satisfy a low term sentence, and she had already rejected a prior offer for probation and counseling. The court said it would consider a request for diversion at the right time but that they needed to proceed with jury selection.

At the conclusion of jury selection, the court told defendant that if she was serious about mental health diversion or going to military court, then a proper record would need to be made regarding her potential eligibility. The court invited defendant to file appropriate paperwork. No application was filed and trial proceeded.

The jury found defendant guilty on counts 2 and 3 (stalking) and was unable to reach a decision on counts 1 and 4 (making criminal threats). The court declared a mistrial as to counts 1 and 4 and dismissed them pursuant to Penal Code section 1385. The court sentenced defendant to two years eight months calculated as follows: a two-year midterm on count 2, plus a consecutive eight-month term (one-third the midterm) on count 3. The court also issued a one-year protective order in favor of the victims (Pen. Code, § 646.9, subd. (k)). Defendant was awarded 710 days of presentence custody credits (355 actual/355 conduct).

This appeal followed.

**DISCUSSION**

The "two-prong standard governing claims of ineffective assistance of counsel is well settled. ' " 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.' " ' " (*People v. Johnson* (2016) 62 Cal.4th 600, 653 (*Johnson*); *Strickland v. Washington* (1984) 466 U.S. 668, 688, 693–696.)

Attorneys have broad discretion in deciding trial tactics and in choosing "the means by which to provide constitutionally adequate representation" to their clients. (*Johnson*, *supra*, 62 Cal.4th at p. 653.) Attorneys are entitled to a presumption that their "performance fell within the wide range of professional competence and that [their] actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel." (*People v. Gamache* (2010) 48 Cal.4th 347, 391 (*Gamache*).)

Our ability as an appellate court to assess whether an attorney's representation was constitutionally deficient is limited because the record usually does not contain any explanation of the attorney's strategy. (*Johnson*, *supra*, 62 Cal.4th at p. 653.) For this reason, the Supreme Court "long ago adopted the rule that ' "[i]f the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or

4

unless there simply could be no satisfactory explanation, *the claim must be rejected on appeal.* [Citation.]" ' [Citations.] The merits of such claims are more appropriately resolved, not on the basis of the appellate record, but rather by way of a petition for writ of habeas corpus." (*Ibid.*, italics added.)

Defendant has not discharged her burden of showing ineffective assistance of counsel. (*Gamache, supra,* 48 Cal.4th at p. 391.) There is nothing in the record explaining why defense counsel did not file an application for mental health diversion after the discussion with the court on the day of jury selection. The record shows only that defendant told her counsel "for the first time" that morning that she was interested in pursuing it, having previously rejected the People's offer of probation and counseling. There is nothing showing it was objectively unreasonable for defense counsel not to file an application. Defendant may have changed her mind after discussing it further with counsel. Defense counsel may have determined defendant had not been diagnosed with a qualifying disorder or did not otherwise meet the statutory eligibility requirements. We are left only to speculate in the face of a silent record.

There is also nothing in the record to support a finding of prejudice—that it was reasonably probable defendant would have qualified for diversion.

An application for mental health diversion requires a showing of multiple eligibility criteria. The defendant must show she has been "diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders . . . . Evidence of the defendant's mental disorder shall be provided by the defense and shall include a diagnosis or treatment for a diagnosed mental disorder within

the last five years by a qualified mental health expert." (Pen. Code, § 1001.36, subd. (b)(1).) The defendant must also demonstrate that the diagnosed mental disorder "was a significant factor in the commission of the charged offense." (*Id.*, subd. (b)(2).)

The court has discretion to grant mental health diversion if those eligibility criteria are met *and* if it is shown that the defendant is suitable for diversion. (*People v. Frahs* (2020) 9 Cal.5th 618, 627.) A defendant is suitable for diversion if "*all of the following criteria are met*: [¶] (1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (Pen. Code, § 1001.36, subd. (c), italics added.)

Defendant, at best, self-reported to the police officers who interviewed her that she suffers from posttraumatic stress disorder from childhood abuse and from "retroactive jealousy OCD." The record does not contain any formal diagnosis by a qualified doctor or other evidence of any suitability factor. Defendant testified at trial that she harassed the victims because she "wanted to prove a point, not create fear but to piss them off so they would finally back away."

On this record, we have no basis to conclude it was reasonably probable defendant would have qualified for diversion.

**DISPOSITION**

The judgment of conviction is affirmed.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.

7